## Case No. 18,210.

### The ZEPHYR.

[3 Mason, 341.] [1]

Circuit Court, D. Massachusetts. May Term, 1824.

BOTTOMRY BOND—PLEDGE OF FREIGHT—RECOVERY OF EXCHANGE.

1. Where a bottomry bond is given upon vessel and freight, it binds them only, and not the cargo, although in a recital in the bond it is stated, that the master was necessitated to take the sum loaned on the vessel, her cargo, and freight.

2. If the omission were by mistake, and so stated in the libel, it might be reformed.

[Cited in Pope v. Nickerson, Case No. 11,274.]
[Cited in Bell v. Morse, 6 N. H. 209.]

3. Where a bottomry bond was given, payable within five days after the arrival of the vessel at Boston, and a bill of exchange was drawn for the amount loaned, at the same time, payable in London, and the agreement was, that if the bill was paid, the bottomry bond should be void, at the option of the borrower, and the borrower does not elect to pay the bill, the lender cannot, in a suit on the bottomry bond, recover the exchange between Boston and London, but must receive the amount of his bottomry bond.

[Cited in Greely v. Smith, Case No. 5,750.]

4. When freight is pledged in a bottomry bond, it means the freight of the whole voyage, and not the freight for that part of the voyage unperformed at the time of giving the bottomry bond.

[Cited in Brett v. Van Praag, 157 Mass. 142, 31 N. E. 763.]

This was a libel, upon a bottomry bond, against the schooner Zephyr, her cargo, and freight. The schooner was bound on a voyage from Messina in Sicily to Boston, with a cargo consisting principally of fruit, and being greatly injured by the perils of the sea during her voyage was compelled to put into the port of Lisbon for repairs and refitment. A survey was here called, and the cargo was unladen for the purpose of repairs, and the latter being completed, the undamaged part of the cargo was reladen, and the libellants also shipped on board about 50 casks of wine for the Boston market. The libellants advanced the money necessary for the repairs, amounting to £856. 7s. sterling, for which the master of the Zephyr drew a bill on his owner's agents, in London, and the libellants also took, as they assert, as collateral security, the bottomry bond now in controversy, upon a premium of £15 per cent. The bond recites, that the master "was necessitated for the prosecution of his voyage from the port of Lisbon to the port of Boston, to take upon the said schooner her cargo and freight for the said voyage," the sum stated in the bond. It then states a

---

1 [Reported by William P. Mason, Esq.]

covenant on the part of the master to proceed to Boston and finish his voyage, and he binds "the said schooner Zephyr, her freight for the said voyage" (omitting any mention of the cargo), "with her appurtenances, for the payment of the sum lent, and the bottomry interest, viz. £984. 16s. sterling, within five days after the ship's arrival at Boston, or at any other port of discharge." He then covenants, "that the said schooner Zephyr, her freight for the said voyage, together with her tackle &c. after her next safe arrival at Boston or any other port of discharge, shall be liable and chargeable at all times" for the amount of the bond. Then follows a clause, "that in case the schooner Zephyr shall be lost, taken, burnt, or cast away before her next safe arrival at Boston or any other port of discharge, or that a bill of exchange dated this day, signed &c. for the said sum £856. 7s. payable in London at 60 days' date to order of Charles Higgs on Messrs. N. H. C. & Company, shall be duly accepted and paid, then and in either of the two cases aforesaid the said payment of £984. 16s. sterling shall not be demanded or recoverable," &c. The schooner duly arrived in Boston, and the bottomry bond not having been paid, the present suit was commenced in October, 1822, and from various causes, was delayed upon the appeal until the hearing at the present term.

Mr. Hubbard, for libellants.
Mr. Peabody, for respondents.

STORY, Circuit Justice (after reciting the facts). It is unnecessary to state any other points presented by the case, except those which have been suggested for argument in this court. The first is, whether the cargo is bound by the terms of the bond, that cargo having been shipped partly on freight, and partly on account of the owners of the ship. It appears to me that the cargo is not, upon the true construction of the terms of the bond, bound by the hypothecation. It is true, that in the preliminary recital it is stated, that the master was necessitated to take upon the schooner, her cargo, and freight, the sum loaned; but the subsequent clauses containing the actual hypothecation confine it in terms to the schooner and her freight for the voyage. If the cargo had been omitted by mistake, and that was made clear by the evidence, it might have furnished another ground to reform the contract. But the libel does not address itself to any such state of facts; and the court is therefore relieved from any further inquiry as to the true import of the terms of the bond. Upon this I have no more to say, than that as they speak a positive and clear language, putting only the vessel and freight under hypothecation, I see no reason to extend the obvious meaning from the more large, but not very definite intention, indicated by the recital.

The next point is, whether the libellants

are not entitled to an allowance, upon the sum due by the bond, of the rate of exchange between London and Boston. The argument is, that the bill of exchange was payable in London; and therefore the court ought to give the party the same benefit, as if it were actually paid there. But the present is not a suit upon the bill of exchange, to recover the simple amount thereof with damages. It is a suit in rem upon the bottomry bond, in which the libellants seek to recover the whole bottomry loan and premium, which by the terms of the bond is payable within five days after the arrival of the vessel in Boston. The money therefore was clearly payable here; and the party cannot entitle himself to the rate of exchange, since the undertaking was not to pay it in London. As to the bill of exchange, recited in the bond, there is no pretence to say, that there was an absolute undertaking by the owners of the schooner to pay it. There is an option given to them by the bond to pay it in lieu of the bottomry premium; and if they do not choose to avail themselves of the alternative inserted in the bond for their benefit, the only effect is, that the hypothecation becomes absolute, and may now be rigorously enforced against the ship and freight.

The remaining point requires more consideration. The district judge decreed to the libellants an allowance of the freight of the whole cargo from Lisbon to Boston, excluding what may be considered a pro rata freight from Messina to Lisbon. The question is, whether the bottomry bond was not intended to cover the whole freight earned in the voyage from Messina. If this were to be decided upon the general principles of maritime law, independently of the particular circumstances of this case, I should have great difficulty in confining the hypothecation to the freight earned on the voyage from Lisbon to Boston. Where the freight is pledged generally, it seems to me, that it includes the freight for the whole voyage, which the ship is in the course of earning; and it would be unjust and inconsistent with the intention of the parties, to restrict it to freight subsequently earned, as upon a new contract. Upon any other construction, where the vessel is repaired at an intermediate port, without any change of her cargo, no freight at all would be hypothecated; for no distinct freight would grow due for the voyage from the port of repairs. The freight ultimately paid would not be divisible; it would be the entire freight for the fulfilment of the original contract for the whole voyage, and not a pro rata freight, as upon a receipt and delivery at the intermediate port. When the parties pledge freight, it must, in the absence of all other counter proofs, be presumed, that they mean the freight to be earned by the ship in the course of the voyage, which has been interrupted by the disaster. By the maritime law of France, indeed, freight, which is to be earned, is not

the subject of hypothecation, though Valin and Emerigon admit, that freight actually earned may be. 2 Valin, Comm. lib. 3, tit. 5, art. 4; 2 Emerig. c. 5, § 2, p. 479. Whether this is the law of other continental nations, it is unnecessary to inquire, for our law is certainly different, and by that alone the present suit is to be determined. Unless, then, some language is used in the instrument now before the court, which calls upon it to narrow the general interpretation of hypothecations of freight, the freight, which was earned upon the whole voyage from Messina, must be brought into court, and subjected to the claim of the bottomry holders. Various clauses are relied upon for this purpose, in which the expression is used, that the hypothecation is of "the schooner and her freight for the said voyage;" but all these expressions, by necessary reference, reflect back upon the antecedent recital, in which the voyage is mentioned, and therefore the whole case resolves itself into the true interpretation of the words of that recital. I have already had occasion to quote the words. There is nothing in them, that points to the commencement of a new voyage. The vessel is stated to be riding at anchor within the port of Lisbon, and bound for Boston, and the money loaned is for the prosecution of the voyage from Lisbon to Boston, and the money is said to be "taken upon the schooner, her cargo, and freight for the said voyage." This is certainly true in point of fact, for her voyage was at that time from Lisbon to Boston; but that is not inconsistent with its being a part of the larger voyage in prosecution from Messina to Boston. If the cargo had been directly hypothecated, it would scarcely be pretended, that it included only the new cargo taken in at Lisbon, for this belonged exclusively to the libellants. As little reason is there to suppose that the freight of this new cargo only was actually hypothecated, for the libellants might have arrived at their object in that view by a shorter way. The freight, in contemplation of the parties, must have been the freight which would be earned by the prosecution of the voyage from Lisbon to Boston; and that freight was what the owners of the ship earned, as well upon the shipment at Messina, as that at Lisbon. I see nothing in the words used in the bond that prevents the court from giving them this reasonable construction. Instruments of this sort are rarely drawn with technical accuracy, and it is the duty of the court to give them a liberal interpretation. The parties have imperfectly expressed their meaning; they have referred to a voyage then intended to be prosecuted farther, which had been partly accomplished, and they take up the voyage at that point of time only at which the bottomry risk was to commence, and describe so much of it as fixed the beginning and termination of that risk. The whole earnings of the vessels were intended to be pledged; and the whole depended upon the successful termination of the remaining part of the voyage. I have no doubt, therefore, that the bottomry holders are entitled to have an account and allowance of the whole freight for the whole voyage from Messina, and I shall decree it to be paid them accordingly.