## Case No. 4,347.

### The ELIZA.

[1 Lowell, 83.][1]

District Court, D. Massachusetts. June, 1866.

H. C. Hutchins, for libellant.

S. H. Phillips, for claimant, cited Perkins v. Hill [Case No. 10,986].

LOWELL, District Judge. By the charter-party, the libellant is owner for the voyage, and the master has a lien, as against the charterer. The point raised is, that he has waived it in favor of this claimant. As a general rule, the master would have no right to waive the lien, and in the case of a person having knowledge of the charter, could not do so. Gracie v. Palmer, 8 Wheat. [21 U. S.] 605; The Salem's Cargo [Case No. 12,248]. Here it is said the master, who made the charter-party on which the libellant relies, must be presumed to have power to vary it, no limitation of his authority being shown. Assuming this to be so, the question is, whether such a waiver is expressed or implied by the bill of lading, or by the conduct of the parties.

The claimant had what is called an assignment of the homeward cargo, but it was of a cargo not in being, as such, when the assignment was made. He could acquire no title, either legal or equitable, to the logwood until it became a cargo by being laden on board the schooner; but the instant it was so laden, the master's lien attached to it. Small v. Moates, 9 Bing. 574; Gledstanes v. Allen, 12 C. B. 202. So that the lien has once attached against this cargo. It is not to be presumed that a master intends to waive his lien without some good reason being shown for such action, or some explicit contract, or some conduct inconsistent with its intended enforcement.

Looking first at the bill of lading, does the master thereby contract to deliver these goods for a reasonable freight, reckoned simply upon the service performed in respect to them? The charter-party does not provide for a distinct freight for the homeward voyage. The agreement that one-half the freight should be earned at the out port, is intended to regulate the rights of the parties between themselves and with underwriters of freight, in case of a loss of the vessel. One-half of the freight is put at risk on each trip. But the freight that is payable at Boston by the charter-party, is eleven hundred and seventy-five dollars; and it may well be said, then, this is what is payable "per charter-party," under the terms of the bill of lading. If it be said that this construction fails to give due effect to the words, "freight for the same," because payment is not wholly for the carriage of these goods, the answer is. that the claimant's construction leaves out of view the expression, "as per charter-party;" and so we are still to seek what is, upon the whole, the more reasonable construction, and the one most in accordance with admitted principles.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

And here the ship-owner's ground appears to be the stronger. It is usual for the master to give the charterer a bill of lading for his goods, and this is deemed to be subordinate to the charter-party, and not to enlarge or diminish the rights thereby created, so far as owner and charterer are concerned. Lamb v. Parkman [Case No. 8,020]. If this cargo had been shipped directly to Wheelwright, the master would probably, in the usual course of trade, have given him precisely such a bill of lading as is here relied on; and it could not have been maintained that he thereby bound himself to receive any less sum than the charter-party entitled him to receive at the home port. Can it be said that the assignee of the charter-party is entitled to a more liberal construction of this paper? I have discovered no equity in his favor upon which to found such a distinction. He is not a bonâ fide purchaser of the cargo without notice, but a purchaser of the charter-party itself, and must be affected with a knowledge of its contents. Under these circumstances, the master gives the usual bill of lading, which is of value to the claimant in many respects: as evidence, for example, of a legal title to the goods, as well as a receipt binding the master and owners; but when its terms are ambiguous, it must be construed according to the existing rights of the parties, and in favor of the existing lien.

The case of Perkins v. Hill [supra], was much relied on by the claimant. We have no report of Judge Sprague's final decision in that case, but are told in a note that the decision which is reported was reversed by the judge on a rehearing, in which new facts were presented. By the report of the case in the circuit court, where the final and unreported decision of this court was affirmed, it appears that these new facts were many and important. The result in both courts was, that a shipper of outward cargo, whose dealings were with the charterer, and who had accounted to him, was not bound to pay freight to the owner of the vessel by reason of having taken a bill of lading, referring to the charter party, when, by the terms of that instrument, no freight was payable for outward cargo. That case did not decide that freight payable as per charter-party means that no freight is payable, but that where, upon reference to the charter-party, it appears that none is payable, the charter-party rather than the bill of lading may, in some cases, prevail, and the whole clause concerning freight in the latter may be rejected. The claimant here desires, in opposition to that doctrine, to overrule the charter-party by the bill of lading, the greater by the less, and that without showing any inconsistency between them, unless it be in a construction of the very clause which in that case was rejected. If we follow that case implicitly, and give no effect to the controverted part of the bill of lading, the lien remains good, and the libellant must prevail.

Independently of the presumptions in favor of the lien, the construction of the bill of lading, which the claimant asks for, appears somewhat forced and over-nice. If the master had intended to deliver this cargo for any sum less than his remaining charter-money, he would probably have expressed himself so, and have stipulated for a specific freight, as in the case of the eight barrels of honey. An agreement for a reasonable freight is unusual, inconvenient, and unmercantile; it may be necessary to infer such an agreement in some cases, as in such an one as appeared on the first hearing in Perkins v. Hill, but I see no reason for saying that this is one of them. Decree for the libellants.