GUSTAVUS A. BRETT & others *vs.* JUDAH VAN PRAAG.

Suffolk. March 9, 10, 1892. — September 10, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Charter-Party — Bottomry Bond — Freight — Demurrage — Set-off.*

A charter-party provided that the vessel was to proceed from a port in Georgia to Surinam, South America, and back to New York or Boston; that the charterer was to furnish at the Georgia port a full cargo of lumber, and at Surinam sufficient cargo or ballast for the voyage; that the charterer was to pay "for the use of said vessel during the voyage aforesaid" certain charges and fees, and a certain sum "for each and every thousand feet, superficial inch invoice measure, delivered at Surinam, which shall be in full for the voyage out and home, two hundred dollars in specie to be advanced the captain at Surinam, free of premium, exchange, or commission, the balance payable on return of vessel and proper discharge of cargo. If vessel should be lost after discharge of outward cargo, one half of this charter shall be considered due and payable at Boston"; and that for each day's detention of the vessel at Surinam, by the default of the charterer or his agent, in excess of thirty running lay days, demurrage at a certain rate should be paid by the charterer. The vessel loaded with lumber at the Georgia port, and proceeded to Surinam, in entering which port she was damaged, but delivered her cargo to the consignee, and was there repaired. To pay for the repairs, the master of the vessel borrowed a certain sum from the charterer's agent, and executed a bottomry bond to him, by the terms of which the "vessel, her tackle, apparel and furniture, and freight as per charter-party," were hypothecated. This bond was assigned to the charterer by the agent. The charterer made certain advances to the master at Surinam as provided in the charter-party. The vessel loaded a homeward cargo, but was detained, by default of the charterer or his agent, a certain number of days over the lay days stipulated in the charter-party. She then started on her homeward voyage, sprung a leak, put into St. Thomas for repairs, was surveyed, condemned, and sold. A draft was drawn there by the master to pay general average and other expenses, to secure which bills of lading for the homeward cargo, shipped by the master by another vessel, were pledged, and to obtain the bills the draft was paid by the charterer. A general average was stated subsequently. *Held*, in an action on the charter-party, that neither the freight on the outward voyage, nor demurrage, was included in the bottomry bond; that the advances at Surinam were to be deducted from the outward freight; and that the charterer was entitled to recover in set-off the proportion of the draft drawn at St. Thomas, due from the vessel to the cargo, as adjusted.

CONTRACT, in two counts, to recover freight and demurrage under a charter-party. The defendant filed a declaration in set-off for money paid to the plaintiffs' use. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal, upon agreed facts, in substance as follows.

The plaintiffs were, during the times mentioned herein, the owners of the schooner Nellie Scott, whose home port was Eastport, Maine. On April 19, 1880, the schooner was chartered to the defendant for a voyage from Brunswick, Georgia, to Surinam, South America, and back to Boston or New York. The charter-party contained the following provisions: "The said party of the second part doth engage to provide and furnish to the said vessel at Brunswick a full and complete cargo of resawed lumber; at Surinam the sufficient cargo or ballast for the voyage, and to pay to said party of the first part, or agent, for the use of said vessel during the voyage aforesaid; to pay all the vessel's foreign port charges, pilotages, lighterages, and consul's fees, and $15.50 United States currency for each and every thousand feet, superficial inch invoice measure, delivered at Surinam, which shall be in full for the voyage out and home, two hundred dollars in specie to be advanced the captain at Surinam, free of premium, exchange, or commission, the balance payable on return of vessel and proper discharge of cargo. If vessel should be lost after discharge of outward cargo, one half of this charter shall be considered due and payable at Boston. It is agreed that the lay days for loading and discharging shall be as follows: . . . thirty running lay days at Surinam. . . . And that for each and every day's detention by default of said party of the second part, or agent, (30) thirty dollars per day shall be paid by said party of the second part, or agent, to said party of the first part, or agent."

The schooner at the time was tight, stanch, strong, and in every way fitted for the agreed voyage. She duly proceeded to Brunswick, and there loaded under the charter-party 162,815 feet of resawed lumber, superficial inch invoice measure, and left Brunswick with the cargo, in good and seaworthy condition, for Surinam, on June 20, 1880. On the voyage she struck on the bar at the entrance of Surinam River, and became leaky and full of water. She was then towed to Surinam, and arrived on August 7, with her decks under water. She was moored on the flats, and delivered all her cargo of lumber *in specie* to the consignee. The schooner was then in need of repairs, and she was accordingly repaired, the repairs occupying about twelve days. All the repairs were necessary, and to pay for them the master,

being without funds or credits of his own or the plaintiffs', borrowed of M. S. Van Praag and Company, the agents of the defendant in Surinam, the sum of $2,560, and to secure the payment of the same executed on December 15, 1880, a bottomry bond, by which the " vessel, her tackle, apparel, furniture, and freight, as per charter-party," were hypothecated. The sum was lent upon such bottomry to the master by M. S. Van Praag and Company, acting as agents of the defendant, and was charged by them to the defendant, and the latter credited them with the amount. On December 17, 1880, the bond was duly assigned by M. S. Van Praag and Company to the defendant. The authority of the master to borrow the money on such bottomry and to execute the bond is admitted by the plaintiffs. Nothing has been paid on account of the bond or loan.

The schooner was ready to load her homeward cargo about October 15, 1880, and thereafter began to take in cargo. She finished loading about the middle of December, being detained, by default of the defendant or his agent, thirty-two days over and above the lay days stipulated in the charter-party, for which demurrage, according to the terms of the charter-party, amounted to $960. The schooner left Surinam with this homeward cargo on December 18, 1880, for Boston. She encountered heavy weather and seas, sprung a leak, and by peril of the seas was obliged to make St. Thomas for repairs. She arrived on December 28, and discharged her cargo, and received certain repairs. She then reloaded her cargo, and immediately began to leak again. The cargo was again discharged, and upon the request of the master a board of three surveyors was duly appointed by the United States consul at St. Thomas, who, after an examination, made a report in writing, recommending that the vessel be sold by public auction. The vessel was thereupon sold by the master by auction, and brought $800, which sum was used by the master in paying the wages of the seamen, and the schooner did not return to Boston.

Upon the discharge of the cargo at St. Thomas, the master chartered another vessel, the Cydeline Barnard, then in St. Thomas, to load and take it to Boston. Bills of lading for the same were given to the master of the Nellie Scott, and were pledged by him to secure a draft for $4,860.70, drawn by him to

pay the general average and other expenses at St. Thomas upon the vessel and cargo. The draft was paid by the Insurance Company of North America, to whom the bills of lading were indorsed; and, upon the arrival of the cargo in Boston, the defendant, to obtain the same, was obliged to pay to the insurance company the amount of the draft. He was also obliged to pay the freight upon the cargo due to the Cydeline Barnard for carriage from St. Thomas to Boston, being $1,500.

Upon the arrival of the cargo at Boston a general average was stated by a competent adjuster, which showed the balance due from the ship to the cargo to be $543.81.

The defendant paid all the foreign port charges, pilotages, lighterages, and consul's fees, due under the charter-party, and also advanced $238 in specie to the master at Surinam, free of premium, exchange, or commission. At $15.50 United States currency for each and every thousand feet, superficial inch invoice measure, of resawed lumber delivered by the Nellie Scott at Surinam, the total sum is $2,523.63, the amount of freight provided under the charter-party.

*E. N. Hill,* for the plaintiffs.

1. The freight claimed by the plaintiffs is due by virtue of the charter-party. The contract recited the whole consideration to be paid by the defendants for the hiring of the ship, but the freight was not conditional upon the completion of the round voyage. It had been earned upon the arrival at Surinam and the delivery of the outward cargo. The master could have an advance at Surinam, but if the vessel was lost, one half the charter was to be paid in Boston. The vessel was lost within the terms of the charter-party. It was at least a constructive total loss. Damaged beyond repair, she was duly condemned by a proper authority and sold. It was such a loss as would be good on an insurance policy. *Wood* v. *Lincoln & Kennebeck Ins. Co.* 6 Mass. 479. *Gordon* v. *Massachusetts Ins. Co.* 2 Pick. 249. *Orrok* v. *Commonwealth Ins. Co.* 21 Pick. 456. *Hall* v. *Ocean Ins. Co.* 21 Pick. 472. *Graves* v. *Washington Ins. Co.* 12 Allen, 391. *Bullard* v. *Roger Williams Ins. Co.* 1 Curtis C. C. 148.

2. The position of the defendant is that the bond holds both outward freight and demurrage. To this the answer is: (1) The bond never included either. Both these items had been earned,

and the defendant was bound to pay. The freight would be due if the vessel safely made the round voyage, and was also due if she was lost after the discharge of the outward cargo. It is essential that what is pledged or hypothecated by a bottomry bond should be subject to a maritime risk, and liable to the danger of perishing by reason of that risk. *Thorndike* v. *Stone*, 11 Pick. 183, 187. *The Sloop Mary*, 1 Paine, C. C. 671. *The Brig Draco*, 2 Sumner, 157, 186. *The Jonathan Goodhue*, Swabey, 355. *The Indomitable*, Swabey, 446. ʻOnly freight to be earned on a voyage to be accomplished can be subject to a bottomry bond. *The Staffordshire*, L. R. 4 P. C. 194, 210. When freight is pledged in bottomry, the presumption is that it is freight to be earned in the course of the voyage. *The Schooner Zephyr*, 3 Mason, 341. It is to be noted that in this case the agreement was that the freight was for the round voyage. This is to be seen also in cases where the bond has been held good in part and bad in part. The bond in question may be said to be good except as to the outward freight and demurrage, and it is held that a bond covering in part property not exposed to risk is bad as to that part. *The Ship Packet*, 3 Mason, 255. *The Tartar*, 1 Hagg. Adm. 1. *The Nelson*, 1 Hagg. Adm. 169, 176. *The Cognac*, 2 Hagg. Adm. 377. *Cargo ex Sultan*, Swabey, 504. *The Ship Virgin*, 8 Peters, 538. The presumption would seem to be that the freight for the outward voyage and demurrage were not to be included. (2) The bond is gone. It created a lien only upon what could be lawfully included in it, to be enforced upon the arrival of the vessel in Boston. All that could be secured by the bond was lost. The presumption from the agreed facts is that the vessel ceased to exist. If she never arrived, or was lost, the bond is gone. *The Nelson*, 1 Hagg. Adm. 169, 172, 177. The utmost that can be claimed in the case at bar is a lien upon the proceeds of the sale at St. Thomas. *The Great Pacific*, L. R. 2 P. C. 516, 523. *Appleton* v. *Crowninshield*, 3 Mass. 443. *Insurance Co.* v. *Gossler*, 96 U. S. 645. *The Ship Virgin*, 8 Peters, 538. All that was realized from the sale was $800, and this was absorbed by a lien prior to the bottomry, namely, the payment of the wages of the crew. This was a proper disposition of the fund. *Pitman* v. *Hooper*, 3 Sumner, 50. *The William F. Safford*, Lush. 69.

3. As to the claim in set-off on account of draft, the amount seems to be settled by the average adjustment which binds the parties, and the amount ($543.81) is all that the defendant can make claim to.

4. No claim is urged in the pleadings for the advance at Surinam of $200. Every presumption is to be made that the bottomry covered all the debts of the vessel at that port. The fact that the amount advanced exceeds the terms of the contract adds some strength to the inference. If this is correct, the claim follows the bottomry.

*C. T. Russell, Jr.*, for the defendant.

1. The bond being a valid hypothecation, and all benefit and interest therein having passed to the defendant, the question is, Did the freight and demurrage here claimed pass under the hypothecation? The bond expressly hypothecates the vessel and "freight as per charter-party." Nothing was payable until the return of the vessel, unless she was lost on the homeward passage, and then one half the freight was due and payable in Boston. When the bond was executed, no freight was due, nor could the amount of it be then determined. It was clearly the intention to include all the freight provided by the charter-party, and this could properly be done. " And a general hypothecation of the freight by the master in a foreign port will be construed to include all the freight of the whole voyage, whether earned at the time the bond is made or not, provided it has not been paid to the master or owner." 1 Parsons, Ship. 159, 160. *The Eliza's Cargo*, 1 Lowell, 83. "Where the freight is pledged generally, it seems to me that it includes the freight for the whole voyage, which the ship is in the course of earning; and it would be unjust and inconsistent with the intention of the parties to restrict it to freight subsequently earned, as upon a new contract. . . . When the parties pledge freight, it must, in the absence of all other counter proofs, be presumed that they mean the freight to be earned by the ship in the course of the voyage, which has been interrupted by the disaster." Story, J., in *The Schooner Zephyr*, 3 Mason, 341, 344. " Freight in a bond means *prima facie* the whole of the freight on board at the date of granting the bond, if granted in the course of the voyage. . . . If chartered freight be expressed or intended in the bond, then

it would mean the whole freight stipulated in the charter-party under which the ship is sailing or is about to sail, or shall next sail." Maclachlan, Shipping, (3d ed.) 154. Abbott, Shipping, (12th ed.) 118. *The Jacob*, 4 C. Rob. 245. *The Eliza*, 3 Hagg. Adm. 87. The vessel remained *in specie ;* and " so long as a vessel exists *in specie* in the hands of the owner, although she may require repairs greater than her value, a case of 'utter loss,' within the meaning of a bottomry and respondentia bond, does not arise, and she continues subject to the hypothecation." *Insurance Co.* v. *Gossler*, 96 U. S. 645 ; *Delaware Ins. Co.* v. *Gossler*, Holmes, 475. Upon the sale of the vessel by the master, the bond became payable, and the defendant was entitled as salvage to whatever remained of value under the hypothecation. " If the owner chooses to sell a wrecked or injured ship because her repairs will cost more than she will be worth, he may, by abandonment, make this a total loss against insurers ; but not against a bottomry bondholder." 1 Parsons, Ship. 151. So it is held that the bottomry bondholder is entitled to proceeds of cargo saved, as against the underwriter, to whom it was abandoned. The court refers to the bond as covering " unpaid freight." *Insurance Co.* v. *Gossler, ubi supra.* So in the case at bar, that part of the freight sued for was either saved, or not. If not saved, the plaintiffs have no right of action ; if saved, being included in the hypothecated freight " as per charter-party," it is a salvage to which the defendant, as the holder of the bond, is entitled ; and to avoid circuity of action, such freight being in his possession, he can in answer to the action set up his right to retain it.

2. The demurrage claimed is part of the freight, and passed with the freight " as per charter-party " under the hypothecation. Demurrage is merely compensation for use of the vessel in port, as freight is for the use at sea. " It should be regarded as freight pending. It was an amount due from the charterers to the ship-owners for the prolonged use of the vessel. Though not technically freight, it partakes so much of the same character that it must be held subject to the same rule. It represents the earning of the vessel during the voyage or charter, in the performance of which losses were caused by the misconduct of the owner's agent, the master, for which, but for the limitation

of the law, the owners would have been fully liable." Webb, J., in *The Giles Loring*, 48 Fed. Rep. 463, 473. " Demurrage . . . is only an extended freight." *Hall* v. *Barker*, 64 Maine, 343. *Jesson* v. *Solly*, 4 Taunt. 53. *Donaldson* v. *McDowell*, Holmes, 290, 292. *Sprague* v. *West*, Abb. Adm. 548, 554. *Hawgood* v. *Tons of Coal*, 21 Fed. Rep. 681, 686. " Freight signifies the earnings or profit derived by the ship-owner or the hirer of a ship from the use of it himself, or by letting it to others, or by carrying goods for others." *Minturn* v. *Warren Ins. Co.* 2 Allen, 86, 91. " Taking all things into consideration, we are of opinion that this sum allowed in the name of demurrage ought to be considered as in lieu of the earnings of the vessel which were lost by the detention." *Coggeshall* v. *Read*, 5 Pick. 454, 460.

3. As, then, the freight and demurrage, " as per charter-party," have been hypothecated to the defendant, and are salvage remaining after the sale of the schooner, the plaintiffs cannot recover them in this action. " It is a good plea to an action for freight, in bar of the further maintenance of the action, that a certain sum of money had been borrowed on a bottomry bond; that the amount had not been paid." *Place* v. *Potts*, 8 Exch. 705; 10 Exch. 370; and 5 H. L. Cas. 383. And this is a good defence, even if the bottomry bond is not held by the defendant. Even if earned freight cannot be included in a bottomry bond, as not subject to the maritime hazard, so that the bond cannot be enforced in an admiralty proceeding *in rem*, yet in this case all freight " as per charter-party" is, in fact, expressly included, and operates as a transfer to the defendant which may be availed of in answer to a common law action for the very freight which the plaintiffs have pledged and assigned to him. The instrument may be regarded as a simple assignment or pledge. In either event, the plaintiffs are estopped to claim what, for good consideration, they have transferred to the defendant. *Leland* v. *The Ship Medora*, 2 Woodb. & Min. 92.

4. Even if it be held that this hypothecated freight can be recovered, the demurrage sued for cannot be recovered. It will be admitted that no homeward freight can be recovered because the voyage was voluntarily abandoned, and the cargo transshipped at its own expense for its own benefit, and not for that of the ship-owners. All unearned freight was therefore aban-

doned. *Kimball* v. *Tucker*, 10 Mass. 192. *Griggs* v. *Austin*, 3 Pick. 20. *Benner* v. *Equitable Ins. Co.* 6 Allen, 222. *Chase* v. *Alliance Ins. Co.* 9 Allen, 311. *Wells* v. *Calnan*, 107 Mass. 514. *The Tornado*, 108 U. S. 342. For the reasons and upon the authorities before stated, this demurrage was part of the homeward freight. It was incurred in loading the vessel after the discharge of outward cargo, and, by the inability of the vessel to complete her voyage, was of no benefit to the defendant. It was attached to and lost with the freight, to which the plaintiffs would have been entitled had the vessel performed the agreed voyage.

5. The defendant claims in set-off the sum of $543.81 and interest, being the proportion of the general average due from the vessel for the expenses incurred by the master in St. Thomas. These expenses were incurred by the master, as agent for all interests concerned, and bound vessel and cargo. To pay them he bound cargo by taking the bills of lading, upon reshipment, to himself, and pledging them to pay his draft for these expenses. The defendant was obliged to pay the whole draft to obtain his cargo. The plaintiffs, as ship-owners, owe him the proportion due from the vessel upon the general average, as adjusted in Boston.

LATHROP, J. No question of pleading is raised in this case, and we proceed to consider such of the questions discussed by the parties as seem to us to be material.

It is not disputed that the plaintiffs are éntitled to recover the freight on the outward voyage, less advances on account thereof, unless this freight is included in the bottomry bond, and rightly included, with interest, subject to the right of set-off on account of the draft drawn by the master at St. Thomas, and paid by the defendant. The principal questions in the case are whether the master in fact did include the outward freight in the bottomry bond, and whether he had a right so to include it. By the terms of the charter-party, the vessel was to proceed from Brunswick, Georgia, to Surinam, in South America, and back to New York or Boston. The defendant was to furnish at Brunswick a full cargo of lumber, and at Surinam sufficient cargo or ballast for the voyage. The defendant was also to pay, " for the use of the vessel during the voyage aforesaid," certain charges and fees, and fifteen dollars and a half " for each and every thousand feet,

superficial inch invoice measure, delivered at Surinam, which shall be in full for the voyage out and home, two hundred dollars in specie to be advanced the captain at Surinam, free of premium, exchange, or commission, the balance payable on return of vessel and proper discharge of cargo. If vessel should be lost after discharge of outward cargo, one half of this charter shall be considered due and payable at Boston."

By the terms of the bottomry bond, the "vessel, her tackle, apparel, furniture, and freight, as per charter-party," were hypothecated.

If we assume, in favor of the defendant, that the master of the vessel intended to include in the bottomry bond the entire freight payable for the round voyage, we are still of opinion that the master had not the power to include it, since it was not liable to the danger of perishing by reason of a maritime risk. The language of the charter-party is peculiar. The parties evidently intended to provide for two contingencies, the arrival of the vessel and its non-arrival. On the facts of the case we have no doubt that the vessel was " lost," within the meaning of that term in the charter-party, although, very possibly, we might be constrained to hold that the bond could be enforced against salvage of the wreck, if any could be found. *Insurance Co.* v. *Gossler*, 96 U. S. 645.

In *The Staffordshire*, L. R. 4 P. C. 194, it was held by the Privy Council, after much consideration, that freight to be earned on a voyage entered upon after the maturity of the bond could not be hypothecated. It was said by Lord Justice Mellish : " By the very nature of a bottomry bond the person who takes it is to become liable for the maritime risk, and therefore nothing can be hypothecated, except something which is in danger of perishing by maritime risk during the time that the bond is running." L. R. 4 P. C. 210. See also *The Brig Draco,* 2 Sumner, 157, 186 ; *The Indomitable,* Swabey, 446.

For the same reason, if freight is pledged, the charterer is entitled as against the bondholder to deduct from the freight payable at the end of the voyage any advances that have been made before the making of the bond. *The Karnak,* L. R. 2 P. C. 505. *The John,* 3 W. Rob. 170. *The Cynthia,* 16 Jur. 749.

The principal case upon which the defendant relies in support

of his contention is that of *The Schooner Zephyr*, 3 Mason, 341. In that case the vessel was bound on a voyage from Messina to Boston, with a cargo of fruit. On the way she was compelled by sea perils to put into Lisbon for repairs; and there a bond was given on the ship and freight. In the District Court, an allowance of freight for the voyage from Lisbon to Boston was made, excluding what might be considered a *pro rata* freight from Messina to Lisbon. This was reversed by Mr. Justice Story in the Circuit Court, and it was held that the bond covered freight for the whole voyage; and that learned jurist said: " Upon any other construction, where the vessel is repaired at an intermediate port, without any change of her cargo, no freight at all would be hypothecated ; for no distinct freight would grow due for the voyage from the port of repairs. The freight ultimately paid would not be divisible; it would be the entire freight for the fulfilment of the original contract for the whole voyage, and not a *pro rata* freight, as upon a receipt and delivery at the intermediate port. When the parties pledge freight, it must, in the absence of all other counter proofs, be presumed that they mean the freight to be earned by the ship in the course of the voyage, which has been interrupted by the disaster."

In the case of *The Schooner Zephyr*, there having been no delivery of goods at the intermediate port and acceptance by the owner, the doctrine of freight *pro rata itineris* was not applicable ; and the entire freight, being at risk, was held to be covered by the bond.

In the case of *The Eliza's Cargo*, 1 Lowell, 83, on which the defendant also relies, the vessel was chartered for a voyage from Boston to Aux Cayes, in St. Domingo, and back to Boston, at twelve hundred dollars for the round voyage, one half of the charter to be earned on delivery of the cargo at Aux Cayes. The question was whether the master of the vessel had a lien on the homeward cargo for the entire charter, the goods having been shipped on a bill of lading by the terms of which freight was payable " as per charter-party." It was held that he had such a lien. In regard to the clause " one half the charter to be earned," etc., Judge Lowell said : " The agreement that one half the freight should be earned at the out port, is intended to regulate the rights of the parties between themselves and with under-

writers of freight, in case of a loss of the vessel.   One half of the freight is put at risk on each trip."

We have no occasion to question the correctness of the point decided; and the words last quoted are in favor of our view that only the freight of the homeward voyage was at risk when the bond in the case at bar was given; and we are of opinion that only the homeward freight could be included in the bond.

The next question is as to demurrage.   The defendant's contention is, that, as "demurrage is only extended freight," it is included in the bond under the clause "freight as per charter-party."   That "demurrage is only an extended freight" was said by Mr. Justice Heath in *Jesson* v. *Sully*, 4 Taunt. 52; and this remark has been frequently repeated since.   *Hall* v. *Barker*, 64 Maine, 339, 343.   *Sprague* v. *West*, Abb. Adm. 548, 554. *Donaldson* v. *McDowell*, Holmes, 290, 292.   *Hawgood* v. *Tons of Coal*, 21 Fed. Rep. 681, 686.   *The Giles Loring*, 48 Fed. Rep. 463, 473.   These were all cases against the owner or the consignee of cargo for the improper detention of the vessel.   See also *Cogges-hall* v. *Read*, 5 Pick. 454, 460.

No case has been called to our attention by the learned counsel for the defendant, where a sum due for demurrage has been held to be included in a bottomry bond under the name of freight. The demurrage provided for by the charter-party had been earned before the bond was executed, and cannot be said to have been at risk.   Moreover, we should be slow to hold, where the charter-party contained specific clauses relating to both freight and demurrage, and the bond hypothecated the "freight as per charter-party," that the parties intended to include the demurrage.

As to the advances at Surinam on account of the freight, we are of opinion that they are to be deducted from the outward freight.

With respect to the defendant's claim in set-off, there seems to be no dispute between the parties; and the defendant is entitled to recover the sum of $543.81, and interest.

The result is that the judgment entered in the Superior Court must be set aside; and a judgment entered in accordance with this opinion.

*So ordered.*